# Drennen, *et al. v.* White.

## *Bill to Quiet Title.*

(Decided February 4, 1915. 68 South. 41.)

1. *Quieting Title; Pleading; Allegations as to Source.*—Under section 5443, Code 1907, it was not necessary to its sufficiency that a cross bill allege the source and character of the cross-complaint's right or title, or the facts from which he deduced such right or title.

2. *Municipal Corporation; Special Assessment; Tax Title; Sale; Burden of Proof.*—The rule that, unless relieved by express statute, the burden is on him who would trace his right to or interest in lands through tax proceedings to show affirmatively that the requirements of the law with respect thereto were observed in the processes essential to the transmission of title, and that, in the sale of land for taxes, great strictness is required, and every substantial requirement of the law must be complied with, applies in the case of a sale of land to satisfy an assessment for street improvement, notwithstanding the difference in character between such an assessment and a tax.

3. *Same; Sales; Condition Precedent.*—Under sections 708, 709 and 710, City Court of Birmingham, the making of a demand is a condition precedent to the right of the treasurer of the city to call upon the city clerk for an execution, and where such demand is not made or waived by the property owner, the execution is improperly issued, and an attempted sale of the property under it, is void.

. APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by H. K. White against W. M. Drennen and others. Decree for complainant, and respondents appeal. Reversed and remanded.

The bill contained the statutory averments, and prays for the quieting of the title. Respondent Drennen answered, admitting the allegations of the first paragraph, but denies the allegations of the second paragraph, setting up that he is in the peaceable possession of the property, and that his title was paramount to complainant's or the other respondents named in the bill, and sets forth his title by deed from Wild Smith

and wife to Garrett, executed February 3, 1887, and filed and recorded in the office of the judge of probate, Garrett to Mary H. Dearborn, which was filed and recorded, and from Mary H. Dearborn and husband to respondent, on April 18, 1901, and that since said time respondent had not sold same, and still claims to be and is now the owner of said property. White claims through a conveyance made to satisfy certain assessments for street improvements by the proper authorities of the city of Birmingham, while the property was the property of W. M. Jernigan, as fully appears from the opinion.

J. L. DRENNEN, for appellants.

W. S. BURROW, for appellees.

McCLELLAN, J.—(1) The original bill was filed by White against the appellant Drennen and others. It is a statutory bill seeking to quiet the title.—Code, § 5443 et seq. By answers and cross-bills and answers thereto and testimony taken—all likewise seeking the quieting of the other titles to the realty described in the original bill—the questions to be considered were raised below, and are now presented for review here upon errors alone assigned by the appellant Drennen. The first insistence is that the cross-bill of Drennen's corespondent Clark was deficient in its asserted failure to allege sufficient facts to show that he (Clark) was the owner of the property. The source and character of cross-complainant's asserted right or title—the facts from which he deduces his asserted right or title—were not necessary to be averred in order for his cross-bill to be sufficient.—*Adler v. Sullivan*, 115 Ala. 582, 584, 22 South. 87.

The next insistence is that the sale of the property to enforce the payment and discharge of the lien fixed upon the lot under proceedings assessing it for and to the amount of benefits accruing to the property in consequence of street improvements was void, for that the issuance of the executions was not preceded by a demand by the treasurer on the delinquent appellant Drennen, made ten days before the issuance of the executions. Section 708 of the City Code of Birmingham authorizes and requires the treasurer to sell the property for the satisfaction of unpaid assessments for street improvements. Section 709 provides: "It shall be the duty of the city treasurer as soon as any of the assessments mentioned in the preceding section are delinquent, as provided in said section, to make demand in person or by deputy on the owner of the property, against which said assessment has been made, and whenever he or his deputy is unable to find said owner he or his deputy may leave a written demand at the residence of such owner or his place of business in the city, or where such owner is a non-resident of the city, or where such demand may be made by letter addressed and mailed to such owner's last known residence or post office, and if said assessment is not paid within ten days after said demand is made it shall be the duty of the city treasurer to call upon the city clerk for execution, and the city clerk shall issue the same as hereinafter provided. And whenever any assessments are paid which are delinquent, a delinquent fee of fifty cents shall be paid to the city treasurer by the party paying the same, whether said demand has been made by the city treasurer or not."

Section 710, so far as presently important, reads: "Upon the city treasurer calling upon the city clerk for executions as hereinbefore provided it shall be the

duty of the city clerk to issue an execution against the property assessed for the amount of said assessment, and interest returnable to a date to be mentioned therein, not more than ninety days from its issuance."

(2) In *Harton v. Enslen,* 182 Ala. 413, 62 South. 697, this court said: "Unless relieved thereof by express statute,   *   *.   *   the burden is on him who traces his right to or interest in lands through tax proceedings to show affirmatively that the requirements of law with respect thereto were observed in the processes essential for the transmission of title."

That doctrine was set down in the following, among other, decisions of this court: *Pollak v. Milam,* 190 Ala. 596, 67 South. 381; *McKinnon v. Mixon,* 128 Ala. 612, 29 South. 690; *Oliver v. Robinson,* 58 Ala. 56; *Smith v. Cox,* 115 Ala. 503; 22 South. 78; *Reddick v. Long,* 124 Ala. 260, 265, 27 South. 402; *Johnson v. Harper,* 107 Ala. 706, 708, 18 South. 198. It has also been repeatedly ruled that, as said in *Johnson v. Harper, supra*: "In the sale of lands for taxes, great strictness is required. To divest an individual of his property against his consent, every substantial requirement of the law must be complied with."—*Dane v. Glennon,* 72 Ala. 160, 163; *Oliver v. Robinson, supra; Reddick v. Long, supra; Clarke v. Rowan,* 53 Ala. 400; *Pollak v. Milam, supra; Childress v. Calloway,* 76 Ala. 128, 134.

There is no reason why the stated rules should not have like application in cases where the purpose and effort was to divest the title of the non-consenting individual owner in order to satisfy a charge for street improvements, provided, of course, some other inconsistent, applicable rule is not expressly made to govern in the premises. In each instance the property is undertaken to be subjected in furtherance of governmental activities and under governmental authority. The

fact that the assessment of property for street improve-
ments is based upon the theory of reimbursement for
the governmental outlay by the owner in the propor-
tion he is the gainer by the effect of the improvement
upon the value of his property, whereas ordinarily a
tax is grounded in the theory of constribution by the
taxpayer, for which he derives no benefit apart from
that the mass of citizens derive from the existence of
orderly government—a distinction forcibly and clearly
set forth in *Mayor, etc., v. Klein,* 89 Ala. 466, 7 South.
386, 8 L. R. A. 369—is no satisfying or sufficient rea-
son upon which to rest the conclusion that the rules
first stated in this opinion should not, unless averted
of application as the result of legislative expression,
be accorded like effect in cases of the kind under re-
view.

(3) Sections 709 and 710, quoted before, required a
personal demand, by the treasurer, or his deputy, upon
the delinquent if he could be found; or, if he was not
a non-resident and could not be found, then a written
demand was required to be left at his residence or place
of business; and the demand upon the delinquent must
have been made ten days before the treasurer was au-
thorized to call upon the city clerk for an execution to
sell the property. Our opinion is that the making of
the demand prescribed was a condition precedent to
the right of the treasurer to call upon the city clerk
for the execution and a condition precedent for the is-
suance thereof by the clerk. The object the prescribed
demand was intended to conserve was to afford the de-
linquent a reasonable opportunity, under the influence
of the impelling presence of the impending issue of an
execution and a sale of the property thereof, to volun-
tarily discharge the lien on his property. A valuable,
conservative, and highly desirable prescription in favor

of the lienee was thus raised up. This right, positively provided, could not be ignored, though it might be waived by the owner of the property who was entitled to the demand. If the prescribed demand was not made by the treasurer, and it was not waived by the property owner on whom the demand should have bene made, the execution was improperly issued, and an attempted sale under it was void.

Apt analogy for this conclusion is found in the cases of *Crebs v. Fowler*, 148 Ala. 366, 42 South. 553, and *Harton v. Enslen*, 182 Ala. 408, 413, 62 South. 696. There the prescription was for notice to the former owner, or to his successors to the privilege, that he might have the opportunity to redeem the property and thus avoid its sale by the state to an applying purchaser. It was ruled that the notice, and the opportunity predicated of it, was a condition precedent to the right of the state to sell; and that the purchaser took no title under a conveyance from the auditor if the notice required was not given by the auditor. Here the case for the owner is stronger in this: That here Drennen's title had not been divested when the prescribed demand should have been made upon him, whereas,.in the tax cases cited, the title had been divested and opportunity to redeem was the legislative concern.

Now the only evidence we see bearing upon this matter of a demand by the treasurer upon Drennen is that of the treasurer, Eustis. His testimony is to the uncontradicted effect that he had the executions, from the city clerk, in his hands (they having already been issued) when the conversation he details with Drennen was had. So there is no evidence that the prescribed demand was made as sections 709 and 710 contemplated. There is no presumption that it was made by the

officer.—*Authorities supra.* There is no evidence that Drennen waived compliance with the provisions of the ordinance prescribing demand upon him as a delinquent. The result is that the attempted sales under the executions were void, not shown to have been preceded by the demand prescribed by the sections 709 and 710.

The decree appealed from is therefore affected with error. It must be reversed in toto. In the posture the cause and its parties are put by this conclusion, it is desirable, if not necessary, that the cause be remanded for further proceedings below, not inconsistent with this opinion.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.